IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Luis Avelino Camacho, | No. CV-16-0513-PHX-GMS (DKD) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| Charles L. Ryan, | |
| Respondent. | |

TO THE HONORABLE G. MURRAY SNOW, U.S. DISTRICT COURT JUDGE:

Luis Avelino Camacho filed a Petition for Writ of Habeas Corpus challenging his convictions, and ensuing sentences, in Maricopa County Superior Court for one count of kidnapping and one count of conspiracy to commit first degree murder. His habeas petition argues that he received ineffective assistance of counsel. As explained below, the Court recommends that Camacho's petition be denied and dismissed with prejudice.

**Factual and Procedural Background**

In May 2004, a woman was forcibly driven to the desert by several men, including Camacho, who threatened to kill her. (Doc. 8 at 3-4) She escaped and was later rescued by a passing motorist. (*Id.*) For his role in this incident, Camacho was indicted in January 2006 for one count of conspiracy to commit first degree murder and one count of kidnapping. (Doc.1, Ex. A)

In May 2006, Camacho was arrested. (Doc. 1 at ¶ 25) From his arrest until August 2006, Camacho was represented by counsel from the Public Defender's Office

who learned that his office had a conflict and so he moved to withdraw. (Doc. 1, Ex. H) Camacho was then represented by counsel from the Office of the Legal Advocate, Steve Koestner.[1] (Doc. 1, Exs. K at 13-16, L)

As part of his representation of Camacho, Koestner sent the prosecutor an email on April 19, 2007, about a plea offer. (Doc. 1, Ex. L) Koestner subsequently testified that he would only have done so because Camacho was interested.[2] (Doc. 1, Ex. K at 78-79) In this email, Koestner stated that he had spoken to Camacho who had "indicated that he would be amenable to a plea agreement with a stipulated sentence of 15 years." (Doc. 1, Ex. L) Later that day, the prosecutor replied that the only plea he "may be able to offer . . . is a stip to 21 years. If he'll take that we're don[e] - - If not it looks like trial." The prosecutor's email did not contain any mention of a deadline for accepting the 21 year plea offer.

The following morning, Koestner wrote back. His entire email said, "He won't accept that. I will advise him of the offer but he isn't going to accept 21 years. Looks like trial." (Doc. 1, Ex. L) Koestner subsequently testified that this reply indicates that Camacho had told him that he would not "accept anything more than 15" years but that Koestner would talk to Camacho about the offer. (Doc. 1, Ex. K at 80-81)

Koestner's May 1, 2007 timesheets showed that Koestner met with Camacho that day. (Doc. 1-1, Ex. Z) Koestner subsequently testified that he would have advised Camacho to accept the plea. (Doc. 1, Ex. K at 84) On May 2, 2007, Koestner filed a response to the State's motion to designate the case as complex.

On May 10, 2007, Camacho filed a motion to change counsel. (Doc. 1, Ex. Q) As part of the rationale to justify the change, he stated that he had not received a copy of the police report until he had been incarcerated for eight months. (*Id*.) The Court granted his request and provided Camacho with new counsel. (Doc. 1, Exs. N, R) This counsel

---

[1] Camacho's counsel for other pending criminal matters appeared as *Knapp* counsel in this matter. (Doc. 1, Ex. I)

[2] The record shows that Koestner met with Camacho on the same day that he emailed the State about a plea offer. (Doc. 1-1, Ex. Z)

represented Camacho at his November 2007 jury trial in Maricopa County Superior Court where he was found guilty of the two charged counts. (Doc. 1, Ex. B) Camacho received concurrent sentences, the longest being 25 years to life. (Doc. 1, Exs. C, M) On direct appeal, the Arizona Court of Appeals affirmed his convictions and sentences. (Doc. 1, Ex. D)

Camacho filed a petition for post-conviction relief. After it was fully briefed, the Superior Court conducted an evidentiary hearing and denied relief. (Doc. 1, Exs. E, F, O) On appeal of this denial, the Arizona Court of Appeals granted review and remanded for further findings. (Doc. 1, Exs. T, U, V, W, X) On remand, the Superior Court accepted additional materials from the parties, conducted oral argument, and then issued a decision denying Camacho relief. (Doc. 1, Exs. Y, Z, AA; Doc. 11-5, Ex. W) Camacho again appealed and the Arizona Court of Appeals upheld the Superior Court's denial of relief. (Doc. 1, Ex. BB, CC, DD, EE) The Arizona Supreme Court denied Camacho' Petition for Review. (Doc. 1, Exs. FF, GG, HH)

**Analysis**

Here, as in his post-conviction relief proceedings, Camacho argues that he received ineffective assistance of counsel from Steve Koestner during plea negotiations. Respondents agree that this argument was timely presented and fully exhausted. (Doc. 8 at 7)

Standard of Review. The Court can only grant habeas relief if Camacho can demonstrate prejudice from the adjudication of a claim that either "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C § 2254(d). *Lambert v. Blodgett*, 393 F.3d 943, 970, n.16 (9th Cir. 2004); *Bains v. Cambra*, 204 F.3d 964, 977 (9th Cir. 2000).

Under clearly established Federal law on ineffective assistance of counsel ("IAC"), Camacho would need to show that his trial counsel's performance was both (a) objectively deficient and (b) caused him prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This results in a "doubly deferential" review of counsel's performance. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1403 (2011). The Court has discretion to determine which *Strickland* prong to analyze first. *LaGrand v. Stewart*, 133 F.3d 1253, 1270 (9th Cir. 1998). A habeas court reviewing a claim of ineffective assistance of counsel must determine "whether there is a reasonable argument that counsel satisfied *Strickland*'s deferential standard, such that the state court's rejection of the IAC claim was not an unreasonable application of *Strickland.* Relief is warranted only if no reasonable jurist could disagree that the state court erred." *Murray v. Schriro*, 746 F.3d 418, 465-66 (9th Cir. 2014) (internal citations and quotations omitted). In other words, this Court's "pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

The U.S. Supreme Court addressed the application of the *Strickland* standard to plea negotiations in *Missouri v. Frye*, 132 S.Ct. 1399 (2012).[3] In situations like this one, the Supreme Court first noted that "[t]o show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." *Id.*, 132 S.Ct. at 1409. Expanding on this fact pattern, the Court stated two sentences later that "it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Id*. In other words, although it is necessary for a defendant to show that the rejected plea offer was more favorable, it is not sufficient.

---

[3] Camacho argues that this Court should follow *Boria v. Keane*, 99 F.3d 492 (2nd Cir. 1996). However, *Boria,* which predates *Frye*, is factually and procedurally distinguishable from this case because it was undisputed in *Boria* that defense counsel did not advise his client on whether to accept or reject a plea offer and that no state court had reviewed whether this failure to advise constituted IAC. *Id*. at 495, 498.

- 4 -

1 Instead, to meet the burden of demonstrating prejudice, a defendant who alleges that a
2 plea offer was rejected because of counsel's ineffective assistance must also show a
3 reasonable probability that she or he would have accepted the plea offer.

4 Camacho argues that he can demonstrate that there is "a reasonable probability
5 [he] would have accepted the earlier plea offer had [he] been afforded effective assistance
6 of counsel" by showing that the rejected plea offer was more favorable than his sentence.
7 (Doc. 13 at 8-9)  This argument would fold these two different "reasonable probabilities"
8 into one.  Instead, under *Frye*, Camacho needs to demonstrate both that the plea offer was
9 more favorable and that he would have accepted the offer.

10 There is no question that a plea offer for 21 years was more favorable than
11 Camacho's sentence.  Accordingly, Camacho's IAC claim requires him to "demonstrate a
12 reasonable probability they would have accepted the earlier plea offer had [he] been
13 afforded effective assistance of counsel." *Frye*, 132 S.Ct. at 1409.

14 <u>Making the Plea Offer and the Scope of Remand</u>.  The first time the Court of
15 Appeals reviewed Camacho's post-conviction relief proceedings, its decision contained
16 an inconsistency. (Doc. 11-4, Ex. V)  In one paragraph, the decision concluded that "a
17 true [plea] offer was extended and rejected." (*Id.* at ¶ 5)  In the following paragraph, the
18 Court remanded for further findings, including whether Camacho's counsel had
19 "communicated the offer to Camacho and whether Camacho had rejected it." (*Id.* at ¶ 6)

20 Camacho argues that, on remand, the Superior Court should not have made
21 findings about whether the plea offer was extended and rejected because the Court of
22 Appeals had already done so. (Doc. 1, Ex. Y at 38-39; Doc. 13 at 10-11)  The Superior
23 Court disagreed and found that Koestner communicated the offer and that Camacho
24 rejected it. (Doc. 11-5, Ex. W)

25 On appeal, the Court of Appeals conceded that its earlier decision "may have used
26 the term 'rejected' somewhat broadly" and confirmed that the "remand required the trial
27 court to consider whether Camacho himself had made that decision [to reject the offer]."
28 (Doc. 12-1, Ex. AA at n.1)

1  On habeas review, Camacho argues that the Arizona Court of Appeals' inconsistent decisions mean that he is entitled to habeas relief. (Doc. 13 at 10-11) The Court disagrees. It was not unreasonable for the Superior Court to make findings that complied with the scope of the Court of Appeals' remand order and it was not unreasonable for the Arizona Court of Appeals to affirm.

<u>Counsel's Communication of the Plea Offer</u>. The Superior Court found that Camacho's counsel did convey the 21 year plea offer to him. (Doc. 11-5, Ex. W) Camacho raises several arguments why this finding entitles him to habeas relief. None of these objections is well-taken.

*Emails.* First, Camacho argues that the email between Koestner and the prosecutor shows that his counsel rejected the offer without communicating it to him. (Doc. 13 at 13). The Superior Court did not consider this email to be a rejection of the offer. That is not an unreasonable determination. The plain language of the email indicates that Koestner will, but has not yet, conveyed the offer to his client: "I will advise him of the offer but he isn't going to accept 21 years." (Doc. 1-1 at Ex. L) It also seems clear that Koestner's statement is based on a previous conversation with Camacho and his ensuing understanding of his client's settlement posture.

*In-person meeting.* Camacho also argues that it was unreasonable for the Superior Court to find that Koestner communicated the offer to him because Koestner did not meet with him until May 1, 2007. (Doc. 13 at 13) It appears undisputed from the record that May 1 was the first time that Koestner met with Camacho after the April 19-20 emails. However, the plea offer email does not contain a deadline for acceptance and so this delay does not evince Camacho's eligibility for habeas relief.

*Contradictory Testimony.* Before the IAC evidentiary hearing, Camacho submitted an affidavit stating that his counsel did not convey the 21 year plea offer. (Doc. 11-5, Ex. W) At the evidentiary hearing on his PCR Petition, Camacho was asked whether his counsel had told him about the 21 year plea offer. (Doc. 1, Ex. Y at 141:18-19) He responded, "I don't remember that, because, like I said, I fired him. And I don't

1  know what he talked to me or what he did not explain to me." (*Id*. at ln. 20-22)
2  Following the Court of Appeals' remand order, the Superior Court found that the
3  inconsistency between his affidavit and his testimony undermined Camacho's credibility.

4  On habeas review, Camacho argues that the Superior Court improperly impeached
5  him by using these inconsistencies to find him not credible. (Doc. 13 at 12) This
6  argument is not well-taken. As Camacho acknowledges, these inconsistencies were
7  discussed for the first time at oral argument where Camacho's counsel was present at oral
8  argument and able to address this argument. (Doc. 1-1, Ex. Y) The Court cannot say that
9  this credibility finding was unreasonable.

10  <u>Camacho's Rejection of the Plea Offer</u>. Camacho argues that Koestner improperly
11  rejected the offer in his responsive email to the State. (Doc. 13 at 14) As described
12  above, this argument is unpersuasive.

13  Camacho also claims that he would have accepted the plea offer if his counsel had
14  reviewed the police reports with him.[4] (Doc. 11-5, Ex. W) The Superior Court found
15  that he had failed to establish "his version of the events." (*Id*.) The Court of Appeals
16  found that there was no error with this finding. This Court agrees that this finding is not
17  unreasonable such that Camacho is entitled to habeas relief.

18  **IT IS THEREFORE RECOMMENDED** that Luis Avelino Camacho's Petition
19  for Writ of Habeas Corpus be **denied and dismissed with prejudice**.

20  **IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and
21  leave to proceed *in forma pauperis* on appeal be **denied** because dismissal of the
22  Amended Petition is justified by a plain procedural bar and jurists of reason would not
23  find the ruling debatable.

24  This recommendation is not an order that is immediately appealable to the Ninth
25  Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules

---

[4] At the post-remand evidentiary hearing, the Superior Court heard testimony from all of Camacho's lawyers. (Doc. 1-1, Ex. K) Two of them testified that they remembered that Camacho was not interested in a plea. (*Id*. at 112, 134) Accordingly, the Superior Court's finding was consistent with the weight of the testimony.

- 7 -

of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure. Thereafter, the parties have fourteen days within which to file a response to the objections. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See* Rule 72, Federal Rules of Civil Procedure.

Dated this 24th day of June, 2016.

_____
David K. Duncan
United States Magistrate Judge